**LEWIS BRISBOIS BISGAARD & SMITH LLP**
REBECCA R. WEINREICH, SB# 155684
  E-Mail: Rebecca.Weinreich@lewisbrisbois.com
ANGELA A. ZANIN, SB# 229149
  E-Mail: Angela.Zanin@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff HALLMARK SPECIALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| HALLMARK SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KAMFLEX CONVEYOR CORPORATION; and GRANT BRANCH, III,<br><br>Defendants. | CASE NO.   3:20-cv-5563<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>Trial Date:       None Set |

COMES NOW plaintiff Hallmark Specialty Insurance Company ("Hallmark") and files the following Complaint against defendants Kamflex Conveyor Corporation ("KCC") and Grant Branch, III (collectively referred to as the "Defendants").

**PARTIES**

1. At all times mentioned, Hallmark was an Oklahoma Corporation with its principal place of business in Dallas, Texas.

2. Hallmark is informed and believes and based thereon alleges that KCC is an Illinois Corporation with its principal place of business in Chicago, Illinois.

3. Hallmark is informed and believes and based thereon alleges that Grant Branch, III, is an individual residing in Chicago, Illinois.

4849-1728-6599.1

COMPLAINT FOR DECLARATORY RELIEF

## NATURE OF ACTION

4. Hallmark insured Kamflex, LLC, under policy number 77GL0177DA2C, effective October 13, 2017 to October 13, 2018 (canceled August 2, 2018) ("Hallmark Policy"). A true and correct copy of the Hallmark Policy is attached as Exhibit A and is incorporated by reference.

5. KCC and Branch are named in the lawsuit *Desserts On Us, Inc. v. Kamflex Conveyor Corporation, Grant Branch, III,* Northern District of California Case No. 3:19-cv-05944, filed August 20, 2019 and removed September 24, 2019, alleging causes of action for: (1) breach of contract; (2) fraud (false representation made without reasonable basis for believing it to be true); and (3) fraud (fraudulent concealment) ("Underlying Action"). In the Underlying Action, Plaintiff Desserts On Us, Inc. ("Desserts") claims damages arising from a contract between KCC and Desserts for a cookie packaging machine. A true and correct copy of the First Amended Complaint in the Underlying Action is attached as Exhibit B and is incorporated by reference.

6. On or about March 4, 2020, KCC and Branch tendered their defense of the Underlying Action to Hallmark under the Hallmark Policy. Hallmark is not defending the Defendants in the Underlying Action. Hallmark seeks a declaration that it has no obligation to defend or indemnify the Defendants in the Underlying Action.

## JURISDICTION AND VENUE

7. This Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446. Specifically, this Court has federal diversity jurisdiction pursuant to § 1332 because: (1) the amount in controversy exceeds $75,000.00 exclusive of interest and costs; and (2) there is complete diversity between Hallmark on the one hand, and the Defendants on the other.

8. Venue is proper in this District under 28 U.S.C. § 1391because the Underlying Action is pending in this District and, upon information and belief, the alleged contract at issue in the Underlying Action was to be performed in this District.

## FACTUAL ALLEGATIONS

### Underlying Action

9. Desserts sued KCC and Branch in the Underlying Action for damages as a result of an alleged contract under which KCC was to provide Desserts with a cookie packaging system to mechanically package Dessert's cookies (rather than people packaging the cookies), into different size and shapes of containers. Desserts alleges in September 2017 KCC made an offer to design and install the cookie packaging machine which Desserts accepted on October 4, 2017, and that the expected delivery date by KCC was in February 2018.

10. To accommodate the cookie packaging machine, Desserts alleges it (a) purchased additional equipment which would produce cookies in a much greater quantity at a much higher rate of speed, and (b) constructed a new building for the cookie packaging machine.

11. Desserts claims KCC's cookie packaging system was delivered late, in March 2019, did not operate as promised, did not automatically package Dessert's cookies, and was not fit or designed for the particular purpose of packaging Dessert's cookies. Specifically, Desserts alleges

> After Plaintiff signed DEFENDANTS' REMEDY PROPOSAL, on or about March of 2019, defendants installed their cookie packaging system in PLAINTIFF's NEW BUILDING causing 50% of the NEW BUILDING (the "manufacturing side") to be unavailable for any use but operation of defendants' cookie packaging system from that point forward.
> Defendants' cooking packaging machine did not operate as promised, did not automatically package Plaintiff's cookies as promised and was not fit or designed for the particular purpose of packaging Plaintiff's cookies in the various sizes and shapes of containers which Plaintiff used, in violation of the PARTIES' CONTRACT and the implied warranty of fitness for Plaintiff's particular purpose. [Exhibit B ¶¶21-22.]

12. As a result, Desserts alleges it is left with a new building occupied by a non-functional cookie packaging system and all the additional equipment it purchased to accommodate that system for which Desserts now has no use.

### Hallmark Policy Provisions

13. The Commercial General Liability ("CGL") coverage of the Hallmark Policy provides in pertinent part as follows:

> **SECTION I—COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages…

14. The CGL coverage also includes certain exclusions to coverage:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
>
> **j. Damage to Property**
>
> "Property damage" to:
>
> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations. If the "property damage" arises out of those operations; or
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed



on it.

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

15. The CGL coverage contains definitions of certain relevant policy terms:

**SECTION V—DEFINTIONS**

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

1 **b.** You have failed to fulfill the terms of a contract or agreement;
2 if such property ca be restored to use by the repair, replacement,
3 adjustment or removal of "your product" or "your work" or your
4 fulfilling the terms of the contract or agreement.
5 **13**. "Occurrence" means an accident, including continuous or
6 repeated exposure to substantially the same general harmful
7 conditions.
8 **16.** "Products-completed operations hazard":
9 **a.** Includes all "bodily injury" and "property damage" occurring
10 away from premises you own or rent and arising out of "your
11 product" or "your work" except:
12 **(2)** Work that has not yet been completed or abandoned.
13 **17.** "Property damage" means
14 **a.** Physical injury to tangible property, including all resulting loss of
15 use of that property. All such loss of use shall be deemed to occur at
16 the time of the physical injury that caused it; or
17 **b.** Loss of use of tangible property that is not physically injured.
18 All such loss of use shall be deemed to occur at the time of the
19 "occurrence" that caused it.
20 **21.** "Your product":
21 **a.** Means:
22 **(1)** Any goods or products, other than real property, manufactured,
23 sold, handled, distributed or disposed of by:
24 **(a)** You;
25 **b.** Includes:
26 **(1)** Warranties or representations made at any time with respect to
27 the fitness, quality, durability, performance or use of "your
28 product";



4849-1728-6599.1

6
COMPLAINT FOR DECLARATORY RELIEF

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

16. The CGL coverage sets forth who constitutes a named insured under the Hallmark Policy:

**SECTION II—WHO IS AN INSURED**

**1.** If you are designated in the declarations as:

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However,

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the

organization; and

\*\*\*

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

17. The CGL coverage contains certain conditions:

**SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In the Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable or an "occurrence" or an offense which may result in a claim…

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may

also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

18. The Hallmark Policy is endorsed with an Exclusion –Designated Products under form CG 21 33 11 85, which provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> SCHEDULE
>
> Designate Product(s):
>
> All products sold prior to the inception date of the policy.
>
> \*\*\*
>
> This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any of "your products" shown in the Schedule.

19. The Hallmark Policy is endorsed with an Exclusion –Designated Professional Services under form CG 21 16 07 98, which provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Description of Professional Services:**
>
> All professional services.
>
> \*\*\*
>
> With respect to any professions services shown in the Schedule, the following exclusion is add to **Paragraph 2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**



4849-1728-6599.1

9

COMPLAINT FOR DECLARATORY RELIEF

and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability;**

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

20. The Hallmark Policy is endorsed with an Exclusion—Punitive or Exemplary Damages under form HC 00 06 07 12, which provides:

> This insurance does not apply to any claim for punitive or exemplary damages, fine or penalties imposed by law, restitution or any damages which are multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages). If a "suit" shall have been brought against the insured for a claim falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action, however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## FIRST CAUSE OF ACTION

(Declaratory Relief Against Kamflex Conveyor Corporation

Re No Duty to Defend)

21. Hallmark refers to and incorporates by reference the allegations in paragraphs 1 through 20 of this Complaint as though fully set forth herein.

22. Hallmark is not defending KCC in the Underlying Action.

23. There is no duty to defend KCC under the Hallmark Policy. KCC does not qualify as a named insured under the Hallmark Policy, there is no "property damage" caused by an accidental "occurrence" during the policy period alleged as to KCC, and certain exclusions to the

Hallmark Policy preclude coverage for the Underlying Action. In particular, exclusion m. to the Hallmark Policy bars coverage for "property damage" to "impaired property." "Impaired property" is tangible property that cannot be used or is less useful because it incorporates "your product" or "your work" that is defective, or the failure by the insured to fulfill the terms of a contract. Coverage for Desserts' allegations against KCC is barred by this exclusion, as Desserts alleges KCC's cookie packaging system was delivered late, did not operate as promised, did not automatically package Dessert's cookies, and was not fit or designed for the particular purpose of packaging Dessert's cookies. Specifically, Desserts alleges

> After Plaintiff signed DEFENDANTS' REMEDY PROPOSAL, on or about March of 2019, defendants installed their cookie packaging system in PLAINTIFF's NEW BUILDING causing 50% of the NEW BUILDING (the "manufacturing side") to be unavailable for any use but operation of defendants' cookie packaging system from that point forward.
>
> Defendants' cooking packaging machine did not operate as promised, did not automatically package Plaintiff's cookies as promised and was not fit or designed for the particular purpose of packaging Plaintiff's cookies in the various sizes and shapes of containers which Plaintiff used, in violation of the PARTIES' CONTRACT and the implied warranty of fitness for Plaintiff's particular purpose. [Exhibit B ¶¶21-22.]

24. There presently exists a controversy between Hallmark, on the one hand, and KCC, on the other hand, in that Hallmark contends that it has no obligation to defend KCC in the Underlying Action. KCC contends that coverage exists for the Underlying Action under the Hallmark Policy.

25. Accordingly, a declaration of this court is necessary to determine the rights and obligations existing among Hallmark and KCC.

## SECOND CAUSE OF ACTION

(Declaratory Relief Against Kamflex Conveyor Corporation

Re No Duty to Indemnify)

26. Hallmark refers to and incorporates by reference the allegations in paragraphs 1 through 20 of this Complaint as though fully set forth herein.

27. Hallmark has refused a duty to indemnify KCC in the Underlying Action.

28. There is no duty to indemnify KCC under the Hallmark Policy. KCC does not qualify as a named insured under the Hallmark Policy, there is no "property damage" caused by an accidental "occurrence" during the policy period alleged as to KCC, and certain exclusions to the Hallmark Policy preclude coverage for the Underlying Action. In particular, exclusion m. to the Hallmark Policy bars coverage for "property damage" to "impaired property." "Impaired property" is tangible property that cannot be used or is less useful because it incorporates "your product" or "your work" that is defective, or the failure by the insured to fulfill the terms of a contract. Coverage for Desserts' allegations against KCC is barred by this exclusion, as Desserts alleges KCC's cookie packaging system was delivered late, did not operate as promised, did not automatically package Dessert's cookies, and was not fit or designed for the particular purpose of packaging Dessert's cookies. Specifically, Desserts alleges

> After Plaintiff signed DEFENDANTS' REMEDY PROPOSAL, on or about March of 2019, defendants installed their cookie packaging system in PLAINTIFF's NEW BUILDING causing 50% of the NEW BUILDING (the "manufacturing side") to be unavailable for any use but operation of defendants' cookie packaging system from that point forward.
>
> Defendants' cooking packaging machine did not operate as promised, did not automatically package Plaintiff's cookies as promised and was not fit or designed for the particular purpose of packaging Plaintiff's cookies in the various sizes and shapes of containers which Plaintiff used, in violation of the PARTIES'

CONTRACT and the implied warranty of fitness for Plaintiff's particular purpose. [Exhibit B ¶¶21-22.]

29. There presently exists a controversy between Hallmark, on the one hand, and KCC, on the other hand, in that Hallmark contends that it has no obligation to indemnify KCC in the Underlying Action. KCC contends that coverage exists for the Underlying Action under the Hallmark Policy.

30. Accordingly, a declaration of this court is necessary to determine the rights and obligations existing among Hallmark and KCC.

## THIRD CAUSE OF ACTION

(Declaratory Relief Against Grant Branch, III

Re No Duty to Defend)

31. Hallmark refers to and incorporates by reference the allegations in paragraphs 1 through 20 of this Complaint as though fully set forth herein.

32. Hallmark is not defending Grant Branch, III in the Underlying Action.

33. There is no duty to defend Branch under the Hallmark Policy. Branch does not qualify as a named insured under the Hallmark Policy, there is no "property damage" caused by an accidental "occurrence" during the policy period alleged as to Branch, and certain exclusions to the Hallmark Policy preclude coverage for the Underlying Action.

34. There presently exists a controversy between Hallmark, on the one hand, and Branch, on the other hand, in that Hallmark contends that it has no obligation to defend Branch in the Underlying Action. Branch contends that coverage exists for the Underlying Action under the Hallmark Policy.

35. Accordingly, a declaration of this court is necessary to determine the rights and obligations existing among Hallmark and Branch.

/ / /
/ / /
/ / /
/ / /

**FOURTH CAUSE OF ACTION**

(Declaratory Relief Against Grant Branch, III

Re No Duty to Indemnify)

36. Hallmark refers to and incorporates by reference the allegations in paragraphs 1 through 20 of this Complaint as though fully set forth herein.

37. Hallmark has refused a duty to indemnify Grant Branch, III in the Underlying Action.

38. There is no duty to indemnify Branch under the Hallmark Policy. Branch does not qualify as a named insured under the Hallmark Policy, there is no "property damage" caused by an accidental "occurrence" during the policy period alleged as to Branch, and certain exclusions to the Hallmark Policy preclude coverage for the Underlying Action.

39. There presently exists a controversy between Hallmark, on the one hand, and Branch, on the other hand, in that Hallmark contends that it has no obligation to indemnify Branch, in the Underlying Action. Branch contends that coverage exists for the Underlying Action under the Hallmark Policy.

40. Accordingly, a declaration of this court is necessary to determine the rights and obligations existing among Hallmark and Branch.

WHEREFORE, Hallmark prays for judgment against Defendants as follows:

1. On the First Cause of Action for a judgment declaring that Hallmark has no duty to defend KCC in the Underlying Action under the Hallmark Policy;

2. On the Second Cause of Action for a judgment declaring that Hallmark has no duty to indemnify KCC in the Underlying Action under the Hallmark Policy;

3. On the Third Cause of Action for a judgment declaring that Hallmark has no duty to defend Grant Branch, III in the Underlying Action under the Hallmark Policy;

4. On the Fourth Cause of Action for a judgment declaring that Hallmark has no duty to indemnify Grant Branch, III in the Underlying Action under the Hallmark Policy;





5. For costs of suit incurred herein, including attorneys' fees, where permitted by conduct and/or law; and

6. For such other relief as the court may deem just and proper.

DATED: August 11, 2020                LEWIS BRISBOIS BISGAARD & SMITH LLP


By:  _____/s/ Angela A. Zanin_____
     Rebecca R. Weinreich
     Angela A. Zanin
     Attorneys for Plaintiff Hallmark Specialty Insurance Company